UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH ANTWANE GARRISON,

        Petitioner,

v.                                                      CIVIL CASE NO. 04-CV-71234-DT
                                                        HONORABLE BERNARD A. FRIEDMAN

HUGH WOLFENBARGER,

        Respondent.

_____/

**<u>ORDER DENYING PETITIONER'S APPLICATION
FOR THE WRIT OF HABEAS CORPUS
AND PETITIONER'S MOTION FOR A STAY</u>**

**I. Introduction**

Petitioner Joseph Antwane Garrison has filed a *pro se* habeas corpus petition under 28

U.S.C. § 2254.  Also pending before the Court is Petitioner's motion for a stay of the

proceedings.  Having read the parties' pleadings and the state court record, the Court concludes

that the habeas petition and the motion for a stay must be denied.

**II. Background**

**A. State Court Proceedings**

On August 4, 2000, a circuit court jury in Kent County, Michigan found Petitioner guilty

of first-degree (felony) murder, MICH. COMP. LAWS § 750.316, and larceny from a person, MICH.

COMP. LAWS § 750.357.  The convictions arose

> from an incident where [Petitioner] knocked the victim off a ladder and beat him,
> resulting in the victim's death several weeks later.  [Petitioner] also took the
> victim's wallet for a short period of time.  Throughout the lengthy trial, a variety
> of witnesses were presented, many of who[m] gave conflicting testimony about
> the events of the day of the incident.  [Petitioner's] brother, Earl Lewis, testified

that he observed [Petitioner] punch and kick the victim in the head.  [Petitioner] asserts that Lewis was actually the perpetrator of the crime, but admitted to police that he picked up the victim's wallet during the incident.

*People v. Garrison*, No. 231385, at 1 (Mich. Ct. App. Oct. 8, 2002).  The trial court sentenced

Petitioner to life imprisonment for the murder and to a concurrent term of five to twenty years

for the larceny.

Petitioner raised the following four claims through counsel in an appeal of right:

I.     Where Joseph Garrison was convicted for felony murder, the instructions violated *Aaron* and did not require that the jury find guilt beyond a reasonable doubt on all the elements because the instructions told the jury that Garrison was guilty if he had been aiding in committing the felony of larceny from a person and did not require that he also had to have been aiding in the murder.

II.    Where the jury foreman went to the scene of the crime before closing arguments and then used his knowledge to clear up questions and uncertainties during deliberations, the circuit judge reversibly erred in denying Joseph Garrison a new trial because of the improper and harmful extraneous influences on the jury.

III.   This court should order an evidentiary hearing and motion for new trial concerning the possible juror misconduct and extraneous influences revealed in anonymous letters received after trial, and the failure to hold a hearing denies defendant Joseph Garrison his rights to make a record supporting his claims, to a fair appeal, and to due process.

IV.    Conviction and sentence of defendant Garrison for both first-degree felony murder and for the included felony of larceny from a person were contrary to legislative intent and violated Garrison's constitutional protections against double jeopardy.

Petitioner raised three additional claims in a *pro se* supplemental brief:

2

[V.][1]   The prosecution's negligence in destroying or allowing the original to be discarded of the letter meant it should have been forbidden by MRE 1004 from proving the letter's contents by any other means.

[VI.]   The prosecutor knowingly allowed Melanie Putnam to commit perjury when the prosecutor failed to correct her false testimony regarding the alleged letter.

[VII.]   The defendant was denied both his Sixth Amendment right to counsel during a critical stage in the proceedings and confrontation as well as his statutory right to be present at a jury view of the crime scene conducted by one jur[or] without the permission of the court.

The Michigan Court of Appeals affirmed Petitioner's felony murder conviction, but vacated his larceny conviction and sentence on double jeopardy grounds. *See id.*

Petitioner presented the first three claims listed above to the Michigan Supreme Court in an application for leave to appeal. He did not raise his three *pro se* claims in the Michigan Supreme Court. On March 31, 2003, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *See People v. Garrison*, 468 Mich. 876; 659 N.W.2d 234 (2003) (table).

## B. Federal Court Proceedings

Petitioner signed and dated his habeas petition on March 25, 2004. His grounds for relief and the supporting facts read:

I.   Conviction obtained based on erroneous jury instructions. On the theory that the jury could believe that Joseph Garrison was aiding his brother Earl in taking money from Grant Haney, the trial judge agreed to the prosecutor's request that the jury be instructed on aiding and abetting.

---

[1]The Court has renumbered the claims to follow sequentially the claims presented by Petitioner's attorney.

3

II.     Conviction obtained from jury misconduct (extraneous influence).
        The jury foreman went to the scene of the crime, without the
        court's permission, before closing arguments and then used his
        knowledge to clear up other juror questions and uncertainties
        during deliberations.

III.    Conviction obtained from prosecutor's allowing witness to commit
        perjury.  Witness Melanie Putnam was allowed to testify to the
        contents of a letter that the prosecution could not produce, and the
        prosecutor failed to correct her false testimony regarding the
        alleged letter.

IV.     Conviction obtained from violation of Sixth Amendment right to
        counsel and confrontation.  Defendant was not allowed the right of
        counsel during a critical stage of the proceedings, i.e., juror went
        to scene of crime without permission of the court and used that
        information in jury deliberations with other jurors and defendant
        was not given a chance to confront or challenge this information.

Respondent filed a responsive pleading in which he alleges that:  habeas claims I and III
are procedurally defaulted, not cognizable, or without merit; claim II does not warrant habeas
relief; and claim IV is unexhausted and meritless.  Petitioner subsequently moved for a stay
pending exhaustion of state court remedies.

### III.  Exhaustion of State Remedies and Petitioner's Motion for a Stay

Petitioner agrees with Respondent that he did not exhaust state remedies for his fourth
claim.  He seeks a stay of these proceedings so that he can pursue state remedies for his
unexhausted claim without running afoul of the statute of limitations.  *See* 28 U.S.C. § 2244(d).

The Supreme Court has explained that,

> [b]efore seeking a federal writ of habeas corpus, a state prisoner must
> exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State
> the opportunity to pass upon and correct alleged violations of its prisoners'
> federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*) (quoting
> *Picard v. Connor*, 404  U.S. 270, 275 (1971) (citation omitted)).  To provide the
> State with the necessary opportunity, the prisoner must fairly present his claim in
> each appropriate state court (including a state supreme court with powers of

4

discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan, supra*, at 365-366; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted).

Petitioner raised his first and second claims in the Michigan Court of Appeals and in the Michigan Supreme Court. He raised his third and fourth claims in the Michigan Court of Appeals, but not in the Michigan Supreme Court. Thus, only the first two habeas claims are exhausted.

While it is true that courts may stay and abey a petitioner's exhausted claims and dismiss his unexhausted claims, courts may do so only in limited circumstances. *Rhines v. Weber*, __ U. S. __, __, 125 S. Ct. 1528, 1535 (2005). Stay and abeyance is appropriate only when (1) the petitioner demonstrates "good cause" for his failure to exhaust his claims first in state court, (2) the unexhausted claims are potentially meritorious, and (3) the petitioner has not engaged in "abusive litigation tactics or intentional delay." *Id.*

Petitioner has not provided any reason for failing to raise his third and fourth claims in the Michigan Supreme Court, and his unexhausted claims lack merit for reasons given in the discussion of those claims. *See infra* Part IV.C.2. In addition, the unexhausted claims must be deemed procedurally defaulted because Petitioner no longer has an effective state remedy to exhaust. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996) (concluding that the exhaustion requirement is satisfied if the habeas petitioner's claims are procedurally barred under state law). The deadline for raising Petitioner's third and fourth claims in the Michigan Supreme Court expired fifty-six days after the Michigan Court of Appeals issued its decision. *See* Mich. Ct. R. 7.302(C)(2) and (3).

Petitioner could raise his unexhausted claims in a motion for relief from judgment in the

5

trial court and in applications for leave to appeal an unfavorable decision.  *See* Subchapter 6.500 of the Michigan Court Rules; *see also* Mich. Ct. R. 6.509(A), 7.205(F)(3), and 7.301-02. However, the Michigan Court of Appeals has already adjudicated Petitioner's third and fourth claims, and Michigan Court 6.508(D)(2) prohibits courts from granting relief from judgment if a motion alleges grounds that were decided against the defendant in a prior appeal.   The exception for retroactive changes in the law does not apply here, because Petitioner is not alleging that a retroactive change in the law undermined the court of appeals decision.  The Court concludes that the State's corrective process is ineffective to protect Petitioner's rights.  28 U.S.C. § 2254(b)(1)(B)(ii).

To summarize, Petitioner has not alleged "good cause" for his failure to exhaust state remedies for all his claims, and his unexhausted claims are not potentially meritorious. Consequently, the Court will proceed to address the habeas claims rather than stay the case and permit Petitioner to return to state court.

### IV. Discussion

### A.  The Jury Instructions

The first habeas claim alleges that Petitioner's conviction was based on erroneous jury instructions.  The basis for this claim is the trial court's aiding and abetting instruction.

### 1.  The Claim as Alleged in State Court

Petitioner asserted on direct review that the jury instructions violated *People v. Aaron*, 409 Mich. 672; 299 N.W.2d 304 (1980).   *Aaron* "abolish[ed] the rule which define[d] malice as the intent to commit the underlying felony."  *Id*., 409 Mich. at 727; 299 N.W.2d at 326.  The Supreme Court held that "malice is the intention to kill, the intention to do great bodily harm, or

6

the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm." *Id.*, 409 Mich. at 728; 299 N.W.2d at 326. The supreme court further held "that malice is an essential element of any murder, as that term is judicially defined, whether the murder occurs in the course of a felony or otherwise." *Id.*

### a. Procedural Default

To the extent that Petitioner is raising an *Aaron* claim here, his claim is procedurally defaulted, because he did not object to the jury instruction on that basis during trial. He objected on the basis that there was no evidence to support an aiding and abetting instruction. (Tr. Aug. 3, 2000, at 3-5; Tr. Aug. 4, 2000, at 112.)

A procedural default in the habeas context is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The doctrine of procedural default provides that,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth a four-part test for determining whether a prisoner's constitutional claim is procedurally defaulted and barred from habeas review. The Sixth Circuit explained that courts must ascertain whether: (1) there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state courts actually enforced the state procedural rule; (3) the procedural rule is an adequate and independent state ground on which the

7

state can rely to foreclose review of a federal constitutional claim; and (4) the petitioner has shown cause for not complying with the procedural rule and actual prejudice from the alleged constitutional error. *Id*. at 138.

The procedural rule in question is the State's contemporaneous-objection rule. It requires defendants to preserve constitutional and nonconstitutional issues for appellate review by first objecting in the trial court. *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). An instructional error "should not be considered on appeal unless the issue has been preserved by an objection to the instruction in the trial court." *People v. Handley,* 415 Mich. 356, 360; 329 N.W.2d 710, 712 (1982).

### b. Violation of the Rule; Reliance on the Rule; Adequate and Independent State Ground

Petitioner violated the contemporaneous-objection rule by not objecting to the jury instructions on the ground that they violated *Aaron*. The Michigan Court of Appeals enforced the State's contemporaneous-objection rule by citing *Carines*, by stating that the issue was not preserved, and by reviewing Petitioner's claim for plain error. Plain-error review by a state appellate court constitutes enforcement of the state's contemporaneous-objection rule. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1939 (2005).

The rule was an adequate and independent basis for the state court's decision because the rule was in effect at the time of Petitioner's trial, and it is enforced in Michigan. *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003). The Michigan Court of Appeals relied on the rule, and the Michigan Supreme Court, which denied leave to appeal in a

one-sentence order, did not set aside the procedural bar.

### c. "Cause and Prejudice"

The first three components of a procedural default have been satisfied. Therefore, in order for this Court to consider Petitioner's defaulted claim on the merits, Petitioner must establish (1) cause for his default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750.

Petitioner has not offered any argument in support of a finding of "cause and prejudice." The Court accordingly deems the "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003), *cert. denied*, 540 U.S. 1151 (2004).[2]

### d. Miscarriages of Justice

A petitioner may overcome a procedural default in the absence of "cause and prejudice"

---

[2] Attorney error constitutes cause to excuse a procedural default if the attorney's performance was constitutionally deficient. *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004). An attorney is constitutionally ineffective if the attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). It is unlikely that Petitioner could satisfy the Strickland test even if he had alleged ineffectiveness as "cause" for his procedural default, because the trial court's

> instructions required the jury to find that [Petitioner] killed the victim and committed the killing in the course of committing larceny from a person or in aiding and abetting a larceny from a person. The court specifically instructed the jury that it must find that [Petitioner] caused the victim's death while [Petitioner] had one of the three requisite states of mind.

*Garrison*, Mich. Ct. App. 231385, at 2.

The trial court correctly explained the requisite state of mind for felony murder as the intent to kill, the intent to do great bodily harm, or the intent to create a high risk of death or great bodily harm, knowing that death or such harm was the likely result. (Tr. Aug, 4, 2000, at 103.)

9

upon a showing of actual innocence.  *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing

*Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)).

The miscarriage-of-justice exception applies in the extraordinary case where the habeas

petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of

one who is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388

(2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

      "To be credible, [a claim of actual innocence] requires [the] petitioner to support his

allegations of constitutional error with new reliable evidence--whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not

presented at trial."  *Schlup*, 513 U.S. at 324.  "[T]he petitioner must show that it is more likely

than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id*.

at 327.

      Petitioner has not submitted any new and credible evidence of actual innocence.

Consequently, a miscarriage of justice will not occur as a result of this Court's failure to

adjudicate the substantive merits of Petitioner's claim.  The *Aaron* claim is procedurally

defaulted.

### 2.  Instructing on Aiding and Abetting Over Defense Counsel's Objection

      If Petitioner is alleging that the facts did not warrant an instruction on aiding and

abetting, his claim has no merit for other reasons.  A federal habeas court may not grant the writ

on the basis that a jury instruction was incorrect under state law.  *Estelle v. McGuire*, 502 U.S.

62, 71-72 (1991).  The question on habeas review of jury instructions is whether the disputed

instruction "so infected the entire trial that the resulting conviction violates due process."  *Cupp*

*v. Naughten*, 414 U.S. 141, 147 (1973).  It is not enough that the instruction was undesirable, erroneous, or even universally condemned.  *Id*. at 146.

The prosecutor requested an aiding-and-abetting instruction on the ground that Petitioner aided and abetted his brother, who wanted to obtain money from the victim.  The trial court honored the prosecutor's request, despite defense counsel's objection to the instruction.  (Tr. Aug. 3, 2000, at 3-5.)

There was factual support for the conclusion that larceny played a role in the murder and that Petitioner aided and abetted his brother in committing the larceny.[3]  In addition, the trial court had a duty to instruct the jury on the applicable law, MICH. COMP. LAWS § 768.29, and "[n]either the defense nor the prosecution has the option of precluding the court from carrying out this duty in hopes of forcing an 'all or nothing' verdict."  *People v. Chamblis*, 395 Mich. 408, 415; 236 N.W.2d 473, 476 (1975), *overruled on other grounds by People v. Cornell*, 466 Mich. 335; 646 N.W.2d 127 (2002).

Furthermore, it is unlikely that the aiding-and-abetting instruction had an impact on the jury's verdict regarding the charge of murder.  If the jurors chose to believe Petitioner, they would have had to conclude that his brother killed the victim.  On the other hand, if they chose to

---

[3]  The victim's wallet was missing after he was assaulted.  (Tr. July 27, 2000, at 22, 26.) Petitioner's brother testified that Petitioner gave someone stamps that came from the victim's wallet, (Tr. July 26, 2000, at 33-34), and according to Petitioner's son, Petitioner said he killed the victim because the man did not pay him when he needed the money.  (*Id*. at 110.)

Petitioner himself informed the police that he and his brother approached the victim because the victim owed his brother some money.  Petitioner grabbed the victim's wallet when it fell out of the victim's overalls; he intended to look in the wallet for money, but his brother snatched the wallet out of his hands.  (Tr. July 31, 2000, at 91-92; Tr. Aug. 2, 2000, at 15-16.)

believe the testimony of Petitioner's brother, they would have had to conclude that Petitioner was the sole murderer.

The Court concludes that the instruction on aiding and abetting did not infect the entire trial with such unfairness as to make the resulting conviction a violation of due process. Consequently, the state court's denial of relief did not result in a decision that was an unreasonable determination of the facts, nor contrary to, or an unreasonable application of, Supreme Court precedent.  28 U.S. C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 411-13 (2000).

### B.  An Extraneous Influence on a Juror

Petitioner alleges next that his conviction was obtained as a result of an extraneous influence on a juror.  Specifically, the jury foreman made an unauthorized visit to the scene of the crime on the last day of trial and then shared information acquired during his visit with the other jurors.

"The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury."  *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (citing *Morgan v. Illinois*, 504 U.S. 719 (1992)).  However,

> due process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . .   Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217 (1982).  Determinations made in hearings on juror misconduct frequently will depend on testimony of the juror in question.  *Id*. at 217 n.7.  Federal habeas courts may "review constitutional errors at trial such as Sixth Amendment violations under a harmless error standard."  *Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003).

12

Jury foreman William Crane testified at a post-conviction hearing on Petitioner's motion for new trial that he went to the crime scene to see the driveway and the distance between the house and the road.  He claimed that, during the subsequent deliberations, a question arose about the distance between the porch and the road.  One of the jurors checked his or her notes and stated that the distance was fifteen to twenty feet, and another juror said, "Oh yeah, that's right." Mr. Crane then confirmed what the jurors said after explaining to them that he had gone to the house and observed the same thing.  This was the extent of the information Crane shared with the jurors.  He did not gain additional information from the crime scene, and he observed nothing more than what he had seen in panoramic photographs, which had been entered in evidence.  He claimed that he based his verdict on the evidence presented at trial and that the jurors had not reacted to the information he provided.  (Tr. Oct. 19, 2000, at 7-26.)

The prosecutor agreed that the jury was exposed to extraneous influence.  The trial court, however, denied Petitioner's motion for new trial after determining that the extraneous information duplicated information depicted in photographs.  (Tr. Oct. 26, 2000, at 3-8.)

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and concluded the trial court did not abuse its discretion by denying Petitioner's motion for new trial. The court of appeals noted that the jury foreman was exposed to an extraneous influence and that the information he acquired could have confirmed that certain witnesses were able to observe the crime as they had testified.  The court of appeals nevertheless determined that the extraneous information provided to the jury by the jury foreman duplicated information already in evidence and, therefore, Petitioner was not prejudiced by the information.

The state courts' conclusions that jury foreman Crane did not gain any additional

13

information from his visit to the scene is entitled to a presumption of correctness because the information is supported by the record, and Petitioner has not rebutted the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Furthermore, because the information acquired at the crime scene duplicated information already in evidence, any Sixth Amendment violation could not have had a  "substantial and injurious effect or influence in determining the jury's verdict" and was harmless.  *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Therefore, Petitioner was not deprived of a fair trial or an impartial jury, and the state court's conclusion did not result in a decision that was an unreasonable determination of the facts, nor contrary to, or an unreasonable application of, Supreme Court precedent.  28 U.S. C. § 2254(d); *Williams v. Taylor*, 529 U.S. at 411-13.

### C. Perjury; the Right to Counsel and the Right to Confront Witnesses

The third habeas claim alleges that the prosecutor permitted Melanie Putnam to commit perjury.  The fourth habeas claim alleges that Petitioner was denied his right to counsel and his right to challenge information that jury foreman William Crane acquired during his visit to the crime scene.

### 1.  Procedural Default Analysis

As previously explained, Petitioner's third and fourth habeas claims are procedurally defaulted because Petitioner failed to raise them in the Michigan Supreme Court, and he no longer has an effective remedy to exhaust.[4]  A state prisoner who has defaulted his federal claims in state court is barred from having those claims reviewed in federal court unless he can

---

[4]  The third claim is procedurally defaulted for an additional reason:  Petitioner failed to preserve the issue for appeal by objecting to the alleged perjury at trial.  The Michigan Court of Appeals relied on this omission and reviewed Petitioner's claim for plain error.

14

demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. Because Petitioner has not offered any argument in support of a finding of "cause and prejudice," the Court deems the "cause and prejudice" argument abandoned. *Roberts*, 337 F.3d at 613.

The narrow exception for fundamental miscarriages of justice does not apply, because Petitioner has not submitted any new and credible evidence of actual innocence. *Schlup*, 513 U.S. at 324. Therefore, Petitioner's procedural default bars substantive review of his third and fourth claims.

### 2.  Alternative Analysis

The Court has determined for the following reasons that, even if Petitioner's third and fourth claims were not procedurally defaulted, the claims lack substantive merit.

### a.  The Letter to Melanie Putnam

Petitioner alleges that Melanie Putnam should not have been permitted to testify about the contents of a letter that the prosecution was unable to produce. The letter, which Petitioner supposedly wrote to Putnam, stated that Petitioner had gotten into a fight with somebody and hit him the wrong way. (Tr. July 27, 2000, at 138, 141.) Petitioner asserts that the prosecutor should have corrected Putnam's false testimony about the letter.

> As long ago as *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), [the Supreme] Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in *Pyle v. Kansas*, 317 U.S. 213 (1942). In *Napue v. Illinois*, 360 U.S. 264 (1959), [the Supreme Court] said, "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id*., at 269.

*Giglio v. United States*, 405 U.S. 150, 153 (1972).  However,

> [t]o prevail on a false-testimony claim, [a habeas petitioner] must show (1) that
> the prosecution presented false testimony, (2) that the prosecution knew was
> false, and (3) that was material.  *United States v. Hawkins*, 969 F.2d 169, 175 (6th
> Cir. 1992).  The statement must be "indisputably false" rather than "merely
> misleading."  *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000) (quoting
> *United States v. Lochmondy*, 890 F.2d 817, 823 (6th Cir. 1989)).

*Abdus-Samad v. Bell*, __ F.3d __, __, No. 03-6404, 2005 WL 2036155, at *10 (6th Cir. Aug. 25,

2005).

> The Michigan Court of Appeals correctly recognized that

> [t]here is no reason to conclude that Putnam testified falsely.  Her testimony
> regarding the contents of the letter was consistent with her statements to police on
> the day they interviewed her in jail.  More importantly, there is no indication on
> the record that, even if Putnam testified falsely, that the prosecutor knew she
> would testify falsely.

*Garrison*, Mich. Ct. App.  No. 231385, at 4-5.  Because the state court's conclusion was not

contrary to, or an unreasonable application of, clearly established federal law, Petitioner's third

claim has no merit.

### b.  The Right to Counsel and the Right to Confront Witnesses

The fourth habeas claim alleges that Petitioner was denied his right to counsel and his

right of confrontation when jury foreman William Crane made an unauthorized visit to the crime

scene and then used information gleaned from his visit during the jury's deliberations.  Petitioner

alleges that he was not given a chance to confront or challenge this information.

Defendants in criminal cases have a right to right to counsel at all critical stages of a

judicial proceeding, *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984), and a right to

confront witnesses, *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).   The complete denial of

counsel during a critical stage of a judicial proceeding defies harmless-error analysis and

16

mandates a presumption of prejudice and automatic reversal.  *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *Holloway v. Arkansas*, 435 U.S. 475, 489 (1978).

> A critical stage of a criminal proceeding is "a step of a criminal proceeding, such as arraignment, that h[olds] significant consequences for the accused."  *Bell v. Cone*, 535 U.S. 685, 695-96, (2002).  Where counsel is absent or denied in such instances, "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry [of prejudice to the defendant] is unnecessary."  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (citing *Cronic*, 466 U.S. at 658-59 & 659 n.260).

*Caver v. Straub*, 349 F.3d 340, 349 (6th Cir. 2003).

Petitioner has pointed to no Supreme Court decision which holds that a juror's visit to the crime scene is a "critical stage" of the criminal proceeding.  At least one federal court of appeals has held that "[a]n unsupervised juror site visit does not constitute structural error, but rather is subject to harmless error analysis."  *Sherman v. Smith* 89 F.3d 1134, 1137 (4th Cir. 1996) (*en banc*).

The Michigan Court of Appeals found no merit in Petitioner's Sixth Amendment claims on the grounds that the extraneous influence on juror Crane had no effect on the verdict and did not affect Petitioner's substantial rights.  This Court agrees on the basis of Mr. Crane's testimony that the absence of counsel during the visit to the crime scene and the subsequent use of information gleaned from that visit could not have had a  "substantial and injurious effect or influence in determining the jury's verdict" and was harmless.  *Brecht*, 507 U.S. at 623.  As previously noted, Mr. Crane testified that he did not gain additional information from the crime scene and that he observed nothing more than what he had seen in photographs, which were admitted in evidence.  He claimed that he based his verdict on the evidence presented at trial and that the jurors had not reacted to the information he provided.

Furthermore, Mr. Crane's conduct did not come to light until after trial.  During a hearing

17

on the matter, defense counsel was afforded a full opportunity to cross-examine Mr. Crane about the information he acquired at the crime scene and subsequently shared with the other jurors.

The state court's rejection of Petitioner's Sixth Amendment claims was not contrary to, or an unreasonable application of, any Supreme Court decision.  Therefore, Petitioner has no right to relief on the basis of his fourth and final claim.  28 U.S.C. § 2254(d)(1).

### V.  Conclusion

For all the foregoing reasons, Petitioner is not entitled to habeas corpus relief. Accordingly, his application for the writ of habeas corpus  [Doc. #3] is DENIED.

Petitioner's motion for a stay [Doc. #34] is DENIED for the reasons given above.   His application for appointment of counsel [Doc. #10] is DENIED because habeas petitioners have no absolute right to appointment of counsel, *Cobas v. Burgess*,  306 F.3d 441, 444 (6th Cir. 2002) (citing *McCleskey v. Zant*, 499 U.S. 467, 495 (1987)), *cert. denied,* 538 U.S. 984 (2003), and the interests of justice do not require appointment of counsel.  18 U.S.C. § 3006A(a)(2)(B).

Petitioner's motion for an extension of time to file a reply [Doc. #33] is DENIED as moot.  Petitioner already filed a reply in the form of a motion for a stay.

_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: _____September 2, 2005_

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 6, 2005, by electronic and/or ordinary mail.

s/Carol Mullins
Case Manager